DANIEL R. PERLMAN
(CAL. BAR NO. 236278)
PERLMAN DEFENSE
3500 W. OLIVE AVENUE 3RD FLOOR
BURBANK, CALIFORNIA 91505
Telephone: 818.383.6692
Email: Daniel@FederalCriminalDefense.Pro
*Attorney for Defendant Joel Martin Evans*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AHMED HOSSAM ELDIN ELBADAWY, et al.,**<br><br>**Defendants.** | **Case No.: 2:24-CR-595-JWH-4**<br><br>**DEFENDANT JOEL MARTIN EVANS' SENTENCING MEMORANDUM** |

## I. INTRODUCTION

Joel Martin Evans appears before the Court having accepted responsibility for a serious federal offense. He pleaded guilty to participating in a sophisticated wire fraud conspiracy that caused millions of dollars in losses to businesses and individual victims. He does not dispute the seriousness of the offense, the harm it caused, or that meaningful punishment is warranted.

[redacted]

the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

[redacted]

The defense agrees with those factual observations. The parties differ principally as to what sentence those facts require.

[redacted]

Those circumstances are not offered to excuse what Mr. Evans did. They are relevant because § 3553(a) requires an individualized sentence.

The Guidelines appropriately measure the conspiracy. Section 3553(a) requires the Court to sentence Mr. Evans.

[redacted]

**II. THE GOVERNMENT RECOGNIZES MR. EVANS' DISTINCT ROLE IN THE CONSPIRACY**

Mr. Evans knowingly participated in a serious federal crime. He accepts responsibility for creating the phishing infrastructure used by the conspiracy and administering the Telegram channel through which compromised credentials were transmitted. He knew his conduct was unlawful.

But individual culpability matters at sentencing, and on this point the Government's own description of Mr. Evans' role is significant.

The Government acknowledges that Mr. Evans did not conduct the intrusions into the victim companies. He did not hack the individual victims' cryptocurrency accounts. And he did not share in the proceeds of the cryptocurrency thefts. Instead, the Government describes him as "more akin to a subcontractor" who was paid less than $100,000 for creating the phishing kit and administering the Telegram channel during the attacks.

Those are not defense characterizations. They are the Government's assessment of his role.

The distinction does not make Mr. Evans' conduct innocent or inconsequential. His technical work facilitated serious crimes and substantial losses. It does, however, distinguish his culpability from that of the participants who conducted the intrusions, executed the cryptocurrency thefts, and received the millions of dollars that ultimately drive the loss calculation.

The record also provides context for why Mr. Evans became involved. Long before this conspiracy, he developed substantial computer skills through years of self-directed learning. He built websites, operated gaming servers, and performed legitimate software development work. Those same skills eventually brought him into an online environment where his technical abilities were directed toward unlawful purposes.

[redacted]

[redacted]

The Government appropriately emphasizes that Mr. Evans was paid for his work. Financial motivation plainly played a role, and the defense does not suggest otherwise. But financial motivation does not answer the separate questions of why this particular young man became involved, what his role was once he became involved, or what his conduct tells the Court about the likelihood that he will ever do something similar again.

The offense occupied a discrete period of Mr. Evans' life. It ended nearly four years ago. There has been no subsequent criminal conduct.

Mr. Evans does not challenge the Guideline calculation attributable to the conspiracy. But § 3553(a) requires the Court to look beyond that calculation in determining the punishment appropriate for the individual defendant. Here, even the Government recognizes that Mr. Evans' role was materially different from those who carried out the thefts and received their proceeds.

That distinction should matter in determining his sentence.

**III. MR. EVANS' ACCEPTANCE OF RESPONSIBILITY HAS BEEN DEMONSTRATED BY WHAT HE DID**

[redacted]

[redacted]

Mr. Evans' own letter to the Court is consistent with that record. He accepts complete responsibility and acknowledges that his actions caused "direct, severe, and lasting harm" to individuals and businesses. He does not blame his co-defendants or attempt to explain away his decisions.

[redacted]

Mr. Evans' acceptance of responsibility has been demonstrated by what he did when accepting

responsibility carried consequences.

## IV. OBJECTIVE EVIDENCE CONFIRMS THAT MR. EVANS PRESENTS A VERY LOW RISK OF RECIDIVISM

Section 3553(a) requires the Court to consider the need "to protect the public from further crimes of the defendant." On that question, the Court has considerably more than Mr. Evans' assurance that he will never reoffend.

[redacted]

[redacted]

The years since the offense provide an important real-world check on that assessment. Mr. Evans has committed no further crimes and has performed successfully while under federal supervision. The Court therefore has both a structured assessment of future risk and years of subsequent conduct against which to evaluate it. Both point in the same direction.

The need to protect the public through incapacitation is correspondingly limited.

**V. REHABILITATION IS NOT SOMETHING THE COURT MUST PREDICT**

The Government correctly observes that Mr. Evans was raised in a stable and supportive home. He did not suffer from addiction, untreated mental illness, severe economic deprivation, or the family instability that frequently appears in the histories of criminal defendants. The Government views the absence of those circumstances as making his conduct "harder to excuse."

The defense is not asking the Court to excuse it.

The significance of those circumstances today is different. The stable family structure, employment opportunities, and personal relationships available to Mr. Evans provide the structure within which rehabilitation can continue. More importantly, the Court has years of actual conduct demonstrating how he has used that structure since the offense ended.

His employment provides perhaps the clearest example.

After returning to North Carolina, Mr. Evans began working at his mother's insurance agency. His

mother did not simply provide him a place on the payroll. She required him to become a licensed insurance agent and expected him to assume financial responsibility for himself. Over time, he developed his own relationships with clients and earned increasing responsibility within the business. Most recently, his mother trusted him to operate the agency while she was away on a nine-day church mission to Peru.

That is not a promise about what Mr. Evans intends to do after sentencing. It is evidence of what he has already done.

[redacted]

The Court also has the perspective of someone outside the family. Crystal Prince, a local business owner, does not describe extraordinary accomplishments. She describes something more ordinary and perhaps more useful at sentencing: a person who works, shows up, helps when needed, and has earned the trust of coworkers, customers, and others in his community.

[redacted]

He has not simply avoided further criminal conduct. He has built a legitimate working life, accepted responsibility for others, and earned trust over time.

Rehabilitation in this case is not prospective. It is already underway.

**VI. THE GOVERNMENT'S 30-MONTH RECOMMENDATION REMAINS GREATER THAN NECESSARY**

[redacted]

[redacted]

There are additional reasons why the resulting 30-month recommendation remains greater than necessary.

First, the advisory range is driven principally by loss. The $4.4 million attributed to the conspiracy results in an 18-level enhancement under the present version of U.S.S.G. § 2B1.1. Mr. Evans does not challenge that calculation.

The Sentencing Commission, however, has already adopted an amendment to § 2B1.1 scheduled to take effect November 1, 2026[1]. Under the amended loss table, the same $4.4 million loss falls within a 16-level enhancement rather than the present 18-level enhancement. The amendment is not yet effective and therefore does not alter the Guideline calculation applicable at this sentencing. It does, however, reflect the Commission's considered judgment that offenses involving this amount of loss should receive two fewer offense levels than the current table provides.

[redacted]

---

[1] The United States Sentencing Commission submitted the amendment to Congress pursuant to 28 U.S.C. § 994(p) and specified an effective date of November 1, 2026. Under amended U.S.S.G. § 2B1.1(b)(1), a loss greater than $2 million but not greater than $5 million results in a 16-level increase. See U.S. Sent'g Comm'n, *2026 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary*, Amendment 2, at 13–14 (May 2026).

[redacted]

The remaining considerations under § 3553(a) come after that.

Those considerations include the matters discussed above: Mr. Evans' distinct role in the conspiracy, the fact that he did not conduct the intrusions or share in the cryptocurrency proceeds, his youth at the time of the offense, nearly four years without further criminal conduct, his successful performance under supervision, demonstrated rehabilitation, stable employment and family responsibilities, and objective evidence placing him at very low risk of recidivism.

There is also the present status of the victims' losses. Although the final restitution amounts remain to be determined, the Government has advised undersigned counsel that assets seized from the principal participants are sufficient to compensate the victims in full. That recovery does not reduce the Guideline loss amount or undo the harm suffered by the victims. It does, however, provide relevant context in determining what additional punishment is necessary now.

Finally, general deterrence remains important. The Government is correct that cybercrime can be difficult to detect and investigate and that technically sophisticated conduct can inflict enormous harm. A meaningful sentence should communicate that providing technical assistance to such a conspiracy carries serious consequences.

But the Court's responsibility is to determine what consequences are sufficient for this defendant.

[redacted]

For that reason, the defense respectfully submits that 24 months should not be viewed as the requested sentence. It is the appropriate starting point for considering how much further variance is warranted under § 3553(a).

## VII. THE REMAINING § 3553(a) FACTORS WARRANT A SUBSTANTIAL VARIANCE FROM 24 MONTHS

[redacted]

It does not account for the remaining individualized mitigation developed in the record.

[redacted]

- was 22 years old at the time of the offense;
- occupied a distinct role that the Government itself describes as "more akin to a subcontractor";
- did not conduct the intrusions into the victim companies or hack the individual victims' cryptocurrency accounts;
- did not share in the millions of dollars of cryptocurrency proceeds;
- has no prior criminal history and has committed no subsequent offense in the nearly four years since the conduct ended;
- has performed successfully while under federal supervision;
- has demonstrated rehabilitation through stable employment, increasing responsibility, and family commitments rather than merely promising future change; and

[redacted]

The victims' financial circumstances provide additional context. Although restitution remains to be formally determined, the Government has advised undersigned counsel that assets seized from the principal participants are sufficient to compensate the victims in full.

[redacted]

They are the remaining work of § 3553(a).

[redacted]

The defense therefore submits that the individualized sentencing considerations in this case warrant a sentence substantially below 24 months.

**VIII. PROBATION IS SUFFICIENT; IF THE COURT CONCLUDES INCARCERATION IS NECESSARY, A SHORT CUSTODIAL TERM WILL ACCOMPLISH THAT PURPOSE**

The defense respectfully submits that probation, with such restrictive conditions as the Court finds appropriate, is sufficient to accomplish the purposes of sentencing in this case.

Such a sentence would not disregard the seriousness of the offense. Mr. Evans would remain subject to the Court's supervision and could be required to comply with substantial restrictions on his liberty, including home detention, counseling, limitations relating to computer use, and any other conditions the Court determines appropriate. Most importantly, the record provides little reason to believe incarceration is necessary to protect the public from future criminal conduct.

The defense recognizes, however, that the Court may conclude that some period of imprisonment is necessary to provide just punishment and adequately address general deterrence. If the Court reaches that conclusion, those purposes can be accomplished without a lengthy custodial sentence. A short period of imprisonment followed by a substantial period of home detention as a condition of supervised release would impose both actual incarceration and a continuing restriction on Mr. Evans' liberty while preserving the employment, family structure, and community ties that have supported his rehabilitation. A sentence structured in that manner would recognize the seriousness

of the offense without imposing incarceration for the purpose of incapacitating an individual whom the evidence demonstrates presents very little continuing danger.

Alternatively, if the Court concludes that a conventional custodial sentence is necessary, the defense submits that a sentence of twelve months and one day would provide meaningful punishment and general deterrence while giving appropriate weight to the substantial individualized mitigation discussed above.

[redacted]

Accordingly, the defense respectfully requests probation. If the Court determines that actual incarceration is necessary, a short custodial sentence, whether combined with a substantial period of home detention or imposed as a sentence of twelve months and one day, would adequately provide meaningful punishment and deterrence. In any event, the defense submits that a sentence exceeding 24 months would give insufficient effect to the Commission's imminent amendment and the substantial individualized mitigation presented here.

**IX. CONCLUSION**

The Government has already recognized that Mr. Evans warrants substantial consideration at sentencing. The Sentencing Commission has now adopted an amendment, scheduled to take effect November 1, that would reduce by two levels the loss enhancement driving Mr. Evans' Guideline calculation. Those considerations bring the analysis to 24 months before the Court considers the remaining individualized mitigation under § 3553(a).

That remaining record matters.

[redacted]

For these reasons, Mr. Evans respectfully requests that the Court impose a sentence of probation with appropriate conditions. If the Court concludes that some period of incarceration is necessary, the defense respectfully requests a substantially below-24-month sentence structured to provide meaningful punishment while permitting Mr. Evans' demonstrated rehabilitation to continue.

Dated: August 18, 2026

Respectfully submitted,

_____/s/____________
Daniel R. Perlman
Attorney for Defendant
JOEL MARTIN EVANS